Mr. Smith. Thank you, Your Honor, and may it please the Court. This case involves the use of two documents that weren't confidential, and in any event their use caused no harm to— No, I have a problem with that at the very outset, because my understanding has always been that when a case has gone to trial and the judges articulated findings, and admittedly they were a little bit short here, but according to the other side, your client stole a lot more than two documents and used a lot more than two documents in order to set up the competing company, and we, I believe, you can contradict me, are entitled to affirm based on all the evidence in the record. So, I disagree with that position, Your Honor, on two fronts. I think the first is that the only explicit finding that the District Court made, and that's I believe 4157 of the record, is that there were two documents that were confidential. The District Court cited other exhibits. When she cited those other exhibits, she cited them as examples of those two documents being used. There was no explicit finding as to any other document, and then as a matter of law, this doesn't find facts in the first instance. It can affirm on legal grounds that are presented by the record, but of course, if there's no finding from the District Court . . . JUDGE NANCY GERTNER. If a jury finds negligence, we affirm a judgment on whatever shows negligence in the record, and here, maybe it's a question of how broad or broadly one construes related evidence, but Mr. Apolitch on the witness stand was admitting that he kept the computer with all confidential information on it. MR. BOUTROUS. So, Your Honor, I think there's a distinction between a bench trial and a jury trial. That's why Rule 52 requires findings of facts that didn't exist here. What my client said when he testified was that he used the two documents that the District Court found on, but he was emphatic that he did not believe that those documents were confidential. And the District Court, for its part, didn't hold that concession, so to speak, that the opposing party cites as any kind of concession by my client. I don't want to get too hung up on the confidentiality issues in this case because I think that even if this Court just focuses on the damages issues, the damages need to be reduced substantially in this case. The District Court, even though EHO had no evidence of any actual harm, no lost customers, profits or business opportunities, the District Court awarded EHO nearly $850,000 worth of damages. And to get there, the District Court disgorged my client's entire annual salary from his new employer over $273,000 without any findings to justify that award. It allowed EHO to engage in a one-sided form of rescission, reclaiming the entire amount it paid in severance, but without releasing my client from his obligations. Well, yes, and what consequence would that have? If your client was, quote, released from the obligation not to compete and not to, I mean, I don't understand your argument in that respect. Sure. So, Your Honor, a couple of things about the consideration that my client gave up. One was release of claims against EHO, which had value, and the signer, the managing partner, Brian Springstone, for EHO conceded that those claims had value and it was something that . . . What's your bet? I mean, they say one was dismissed on summary judgment and the other one you didn't pursue or something. What are your claims against EHO? So the principal claim that was asserted was fraud in the inducement in my client entering into the employment relationship with EHO. It was dismissed, but the other side invoked the releases as a basis and a defense, certainly when it came to the idea of dismissal with prejudice. I think the other value that the severance provided was it provided EHO with value beyond the limited universe of documents, whatever that is, Your Honor, that my client used. Well, confidentiality is drawn very, very broadly in the employment agreement alone. I'm sorry. I didn't hear the first part. I apologize. I said confidentiality . . . Yes. . . . is described much more broadly than trade secrets. Yes. I agree, Your Honor. I think that it is all defined in terms of information that is either secret, nonpublic, confidential, proprietary. And so in deciding what was the value that EHO received under the agreement, I think under an actual damages type analysis, this Court needs to look at what was the harm to EHO. It could have sought rescission. So I think one simple way of looking at the severance is if it really thought that there was no value it was receiving from my client's obligations under the agreement, then just rescind. And they can get back the full value of the agreement. But instead, they wanted actual damages. And to prove actual damages, they had to prove harm from my client's use and retention of the confidential information that was at issue. So that relates to the severance. I want to spend a little bit of time on disgorgement because on the issue of disgorgement, the District Court awarded EHO the entire salary that my client earned from his There are two types of damages that are traditionally awarded in the context of a breach of fiduciary duty claim, which was what was at issue here. The first is, of course, damages to the plaintiff for the harm. The second is the benefit of what my client received. Again, no evidence, no dispute from the other side that there was no evidence that Mr. Opolish's use of these documents caused EHO any harm. So what we were dealing with is the benefit that my client derived. The most traditional form of that benefit my client derived would have been essentially the value of using these documents, the cost in preparing them, which was $1,440. That's at ROA 4836. But the District Court didn't award that traditional remedy. The District Court ordered my client to disgorge his entire salary. And in doing so, all the District Court said was there were two findings. One was, he derived a benefit from using these documents. And then second, as a result, EHO is entitled to his entire salary. That as a result is doing a lot of work. It is an ultimate conclusion of fact without any of the subsidiary findings that are in there. The District Court didn't find that Hospice Rx would have only come into existence because of these two documents, that Mr. Opolish was hired because of these two documents, and that he was paid because of these two documents. And then on top of that, Texas law is made clear in cases like Burrough, but there are other cases like Orbison and D'Equy, that it's not always appropriate to award the entire amount of a salary from a third party. The District Court didn't make any findings as to why it selected a year's salary as the appropriate measure here. And so in its legal conclusions, it suggests instead a different basis, that disgorgement is appropriate if a defendant is actively using the plaintiff's confidential information to solicit customers. And the problem there is that there wasn't any evidence of that. My client never solicited any EHO customer to leave, and he didn't solicit any prospective customers as well. And the other side admitted . . . I thought they were all going after Green City, Capital City. My client never submitted a bid for Capital City, and the other side didn't . . . Well, what do you mean? Well, I mean, what's . . . okay, go on. Yes, Your Honor. So there's a distinction, at least Orbison's side, between actively soliciting and what the case law suggests on breach of fiduciary duty, taking steps leading to that point. And my client never actually solicited Capital City. It never pursued Ohio Health. ASCEND was the only finding that the district court made, that's at ROA 4157, of my client soliciting an EHO customer to leave. But that finding's clearly erroneous. Mr. Opelish had conversations with ASCEND about forming a joint venture. It wasn't his proposal to steal, or he didn't talk to ASCEND about stealing EHO . . . ASCEND from EHO. That's at 4799 through 4800. And for that reason, EHO admitted it lost no customers to my client. That's at ROA 4304 and 4829 through 30. The final leg of the damages award that's at issue here is exemplary damages. That's a half a million dollars in exemplary damages. And that award cannot stand, even if you don't accept any of my other arguments. And the reason for that is that that was premised on the notion that disgorgement is a form of compensatory damage. To get to $500,000 under the cap, the district court needed a pot of $250,000 in compensatory damages in which to double. To do that, the disgorgement of my client's salary, the $273,000, had to count as compensatory damages. The problem with that is that the Texas Supreme Court has already spoken on that issue in In Re Longview. And in that case, the Texas Supreme Court held that disgorgement is an equitable remedy, an equitable forfeiture of benefits wrongly obtained. It is not mainly compensatory and cannot be measured by actual damages. Slight distinction in posture there. That had to do with posting a security, and the security was tied to compensatory damages. But I think the holding applies the same because the Texas statute on exemplary damages also applies to compensatory damages. And because disgorgement doesn't qualify, the district court unquestionably exceeded the cap. Now, the other side says that there are alternative basis to affirm there. One of them is that my client's conduct could be characterized as a felony, and for that reason, this court can affirm. But this court has said, and so have Texas courts, and we cite this in our reply brief, that that requires specific factual findings by the fact finder in order to invoke that exception. And none of those exceptions were invoked here. The other side didn't argue for them. And so I think at a minimum, this court needs to set aside the award of exemplary damages. Finally, with respect to the award of exemplary damages, there's a second reason that they could be set aside. The district court never considered evidence related to the factors to set the amount of exemplary damages. She certainly invoked malice and fraud, which are a basis for qualifying for eligibility. But she never made findings under the six factors that justify that award. And so one of the pieces of evidence that's particularly relevant to how punitive an exemplary damage award is, is net worth. The other side never sought any discovery on that, and that evidence wasn't available to the district court. I'm sorry, Judge King? Oh, I apologize. And the Texas legislature has shown that net worth is a valuable form of evidence that it wants in front of trier's effect. It provides a special mechanism that's at 41.0115 for discovery of that type of evidence. And so you have an exemplary damages award that's not founded on compensatory damages, that doesn't include the required evidence, including evidence of net worth, and the other side never presented any evidence on that fact. And so the punitive damages award in this case is excessive, and it should be vacated. So for all those reasons, we would ask that you set aside the findings on liability, at least as the confidential documents, which I'm happy to walk through if there are any further questions on those. And at a minimum, this court should set aside the disgorgement of my client's entire salary to a third party, the severance, and the exemplary damages award. Did Mr. Oppolich testify to what business he's in now? I'm sorry, Your Honor. What business is your client in now? He works for a hospice PBM. So it is a pharmacy benefit manager that manages benefits for hospice providers. Thank you. Thank you, Your Honor. All right. Mr. Walford? Good morning, and may it please the court. My name is Luke Walford, and it's my privilege to appear before you today on behalf of EHO 360 LLC. It's well established that factual findings made during a bench trial deserve great deference. Here, almost all of the issues raised by Mr. Oppolich challenge the district court's factual findings. However, Mr. Oppolich's arguments essentially ask this court to disregard the deferential standard of review, disregard the mountain of evidence against him, and reverse the district court's factual findings and final judgment based on Mr. Oppolich's own dubious reading of the evidence and erroneous interpretation of Texas law. Ultimately, the district court's factual findings and final judgment are supported by overwhelming evidence. They are consistent with Texas law, and this court should affirm the district court's judgment in its entirety. Now, absent different direction from the court, I plan to address Mr. Oppolich's arguments in the order in which he raised them, starting with the argument that the district court committed clear error in finding that Mr. Oppolich misused EHO's confidential information. I wouldn't spend too much time on that if I were you. I'm speaking for myself alone. Well, I appreciate that, Your Honor, and I would just point out, I think, that the question that you asked my friend Mr. Smith was right on point. This case was never about two documents. This case was about far more than two documents. Mr. Oppolich stole EHO's entire hospice business strategy and all the confidential information that EHO developed and created in connection with that business strategy. And I have to point out at least one mistaken statement by my friend. I believe he said explicitly that Judge Boyle only found that Mr. Oppolich used two documents. That's simply not the case. Judge Boyle cited 12 exhibits to support her confidentiality finding. When Judge Boyle read her findings from the bench, she cited even more exhibits. And if you look at ROA 4159, paragraph 11B of Judge Boyle's findings, she even explicitly cites EHO's confidential Ohio health proposal as one of the additional documents, confidential documents that Mr. Oppolich misused. So I don't understand how Mr. Oppolich can make the argument that this case was about two documents when there was a mountain of evidence regarding other confidential information he misused and Judge Boyle explicitly found at least a third document that was EHO's confidential information that he misused. The evidence is clear. Mr. Oppolich misused EHO's confidential information and frankly, he admitted it over and over and over again during trial and he admitted he lied to EHO about it. So with that, I will leave the issue of confidentiality unless your honors have any further questions on that. The second argument raised by Mr. Oppolich is that the district court clearly erred in finding that he breached his fiduciary duty to EHO. Mr. Smith didn't spend much time on this argument, but I believe the argument is that there's no breach of fiduciary duty because the confidential information he stole and repeatedly misused from EHO wasn't sufficiently valuable and EHO did not show sufficient harm from his use of the confidential information. This argument is both legally and factually wrong. First off, there is no requirement in Texas law, Texas law in no case holds that a former employee can steal his former employer's confidential information and it's on the former employer to show post hoc that the information was sufficiently valuable. That is not the law. It would be crazy if that were the law. It would incentivize employees to steal confidential information with the hopes that the employer wouldn't be able to show after the fact that the information was sufficiently valuable. Mr. Oppolich does not cite a single case that says anything close to that there's some value threshold that an employer has to show to prove a breach of fiduciary duty based on the misuse of an employer's confidential information. The second point, that there's no breach of fiduciary duty because EHO did not show that the employer's confidential information is similarly flawed. There is no requirement in Texas law for an employer to show specific harm from a former employee's misuse of its confidential information. Texas law provides four remedies for breach of fiduciary duty that permit, as Judge Boyle did here, the disgorgement of the benefits that are improperly obtained from the fiduciary by its misuse of the former employer's confidential information. There simply is no requirement that a plaintiff bringing a breach of fiduciary duty claim show specific harm in order to be able to prevail on such a claim. But with that said, there was evidence of harm here, and Judge Boyle, when she granted a permanent injunction, actually found that there was evidence of irreparable harm. She found that EHO had been irreparably harmed by Mr. Hippolych's repeated misuse of its information. Mr. Hippolych was sending EHO's pricing information to EHO's competitors. Mr. Hippolych was repeatedly using confidential information about one of EHO's customers, and I believe my friend said that there was no evidence that he solicited an EHO customer to leave. He admitted he did that. And that's why Judge Boyle found that he solicited a SIN PBM to leave EHO. All of this, although the harm that EHO suffers from the misuse of confidential information, as is often the case, is difficult and sometimes impossible to quantify, but there is harm. And so even though Texas law doesn't require a showing of any specific harm in order to prevail on a breach of fiduciary duty claim, this record supports Judge Boyle's finding that EHO did suffer harm and that it suffered irreparable harm. Now I'll turn finally to Mr. Hippolych's arguments regarding Judge Boyle's various damages award. Each of his arguments are without merit. Again, the questions of the amount of damages awarded by a trial judge are reviewed by this court for clear error. The question of whether to award damages is a legal question that's reviewed by this court for de novo, but the amount of damages are reviewed by this court for clear error. And here, Mr. Hippolych fails to demonstrate clear error in any of the district court's damages awards. First, with respect to the disgorgement award, Mr. Hippolych argues, my understanding of his argument is twofold. First, he argues that Texas law limits a district court's discretion in fashioning an appropriate disgorgement award to the benefits that were obtained by the fiduciary only during the time the fiduciary is actively breaching its fiduciary duties. This is simply incorrect as a matter of Texas law. Texas law imposes no rigid restrictions on a trial court or a district court's discretion to fashion an appropriate equitable remedy in cases of breach of fiduciary duty. And in fact, we submitted a 28-J letter last week that directly rejected the argument that Mr. Hippolych makes. Mr. Hippolych bases his argument off the Orbison case in which a Texas appellate court simply upheld a district court's disgorgement award that was limited to the salary that the former employee obtained during the time he was breaching his fiduciary duty. But the appellate court in Orbison said nothing about the district court's discretion to fashion a remedy. It just said that remedy that the district court did fashion in that case was appropriate. And in our 28-J letter, we cited a recent case from the Houston Court of Appeals, the 14th District, that expressly rejects the argument Mr. Hippolych makes and confirms what this Court has actually confirmed before, that in cases of breach of fiduciary duty, a district court has broad discretion to disgorge all benefits obtained as a result of the breach of fiduciary duty, not the benefits obtained only during the time that the fiduciary is breaching the fiduciary duty. The court premised her findings more on fiduciary breach than breach of the settlement agreement, right? Yes, Your Honor. In fact, there was not actually. In entering into a settlement agreement, you'd still have a fiduciary duty, because it's still your employer. Certainly. The fiduciary duty exists outside of any contractual obligation of confidentiality, whether that. So I was taken aback a little bit by this distinction they were drawing between contract and rescission. But that doesn't apply if it's fiduciary duty. No, Your Honor, it does not. And I think that that issue goes to the fraud damages that were awarded by the district court. And we contend that those were absolutely appropriate as well. This was not a rescissory award. This wasn't rescission that Judge Boyle granted here. What happened is, and what the evidence showed, is that the value obtained by EHO from that agreement was zero, because the only reason EHO entered into the severance agreement, the only reason it paid Mr. Apolitch a severance at all, was for his representations, both in the severance agreement itself and in a separate affidavit that he had returned and would not use any of EHO's confidential information. EHO's witnesses testified they would not have entered into that settlement agreement, would not have paid him a dime of severance, but for those representations. And in fact, the evidence clearly showed that EHO did not terminate his employment for making a false statement in a notarized affidavit about his criminal record that he knew EHO was planning to submit to state regulators to obtain PBM licenses. Had they also uncovered at that point that he was already working to form another company to go out? No, no, Your Honor. In fact, although he started doing that, so EHO terminated his employment in September of 2020, he did not sign the severance agreement until November of 2020. And the evidence was clear. Mr. Apolitch admitted it. In between those times, he was already misusing EHO's confidential information that he stole. And then he turns around and signs a notarized affidavit and severance agreement, and when he represents, he doesn't have any EHO confidential information and won't use it in the future. And so the fraud damages are appropriate here because the evidence showed that the fraud damages here are out-of-pocket damages, which are measured by the value paid by the plaintiff, the difference between the value paid by the plaintiff and the value received. And all Mr. Apolitch has argued is that the district court erred in not allocating any value to the release that he put in the severance agreement. Well, the evidence is sufficient to support Judge Boyle's finding that the value of the release was nothing. Mr. Apolitch did not have any claims against EHO at the time that he entered into that severance agreement. He had never indicated or even hinted that he had any claims against EHO. And EHO witnesses testified they certainly were not aware of any claims. The only reason for the severance agreement and the testimony and the record supports this was to get Mr. Apolitch's representations that he had returned and would not use EHO's confidential information. That's the only reason they paid him any severance. And Judge Boyle was well within her discretion as the fact finder to determine that EHO paid over $70,000 in value based on Mr. Apolitch's admitted false representations and that it received zero value in return. The supposed claims that Mr. Apolitch had, first of all, you measure those damages at the time of the fraud. You don't look at what happened after the fact. But since Mr. Apolitch raised that and said, well, we filed a fraudulent inducement counterclaim in the case, and EHO raised the release, that shows there's some value there. Well, actually, what that shows is the release had no value because he filed a counterclaim in this case that was covered by the release. EHO had to incur significant costs and expenses to file a motion to dismiss that claim. And Judge Boyle dismissed the claim not based on the release at all, but because it was a bogus claim. It failed to state any sort of cognizable claim against EHO. So the fraud damages, there's plenty of evidence for this court to affirm Judge Boyle's well-supported finding that EHO was entitled to recover the entire amount of the severance payment that it made to Mr. Apolitch as a remedy for Mr. Apolitch's admitted fraud. Finally, I'll address the last point that Mr. Apolitch raises is related to punitive damages. And he challenges the district court's $500,000 award of punitive damages on three grounds. First, he claims there was no evidence of actual damages, therefore there can be no punitive damages. That's just not true. There was evidence of fraud damages that were appropriate for all the reasons I just laid out. Those damages alone are a sufficient predicate for punitive damages. And there was evidence of the breach of fiduciary duty and the disgorgement damages that were awarded. And disgorgement under Texas law is a proper predicate for punitive damages as well. As well, for 60 years, the Texas Supreme Court has acknowledged that punitive damages may be awarded. What's your best case for that? This is International Bankers Life Insurance Covey-Holloway. Does that predate the statute? It does, Your Honor. But there is a case post-dating the statute. As recently as 2016, the Tyler Court of Appeals held, quote, trial courts are authorized to further protect relationships of trust by assessing a punitive award in addition to disgorgement if warranted by the circumstances. And that is SWINAE v. ERI Consulting Engineers, Inc., 481 Southwest 3rd, 747. Is that cited in your brief? Yes, Your Honor, it is. Accordingly, Mr. Apollich is simply incorrect. Whether it be the fraud damages or whether it be the- Wait a minute. I mean, because the statute talks about economic damages. Yes, Your Honor. So the Texas Supreme Court says disgorgement is compensatory, but it is not damages. I understand. And this goes to the cap, Your Honor. The argument I was just addressing was whether there's a sufficient predicate for punitive damages at all. But turning to your question about the cap, that raises the issue of whether or not the disgorgement damages are economic damages for purposes of the cap. I understand Mr. Apollich's argument is reliance on Longview. I happen to know a little bit about the Longview cases. I worked on that case as a baby associate at the trial level. What happened in Longview, again, as Mr. Smith acknowledges, the court was not addressing the punitive damages statute, first of all. The court was addressing the supersedious bond cap under Texas statute and under Texas rules of appellate procedure. The court, notably in Longview, also questioned whether the monetary award that it was looking at and trying to base the bond on was even disgorgement at all. If you read Longview, the Texas Supreme Court says, I don't know what this $95.5 million monetary award is. Whether it's disgorgement, whether it's actual damages, it's unclear what that award even is. So Longview doesn't address the question of whether a disgorgement award constitutes, quote unquote, economic damages for purposes of calculating the cap under Texas civil practice and remedies code 41.008. In fact, the only case cited by either of the parties that addresses the precise question of whether disgorgement awards constitute economic damages for purposes of the cap is the case we cited, which is AMS censors. And in that case, the Eastern District of Texas, Judge Mazzant, did find that disgorgement awards are, in fact, economic damages for purposes of the cap. That is the only case that directly addresses that question that's cited by either of the parties. And I think, Judge, that case's analysis does make sense when you consider what I was just talking about, how Texas courts have long permitted disgorgement to be a predicate for punitive damages. Because Texas statute also requires, for an award of punitive damages, there must be some actual damages. And because Texas permits punitive damages-based assault when the only monetary award is disgorgement, that indicates that Texas, consistent with the AMS censors case, at least for purposes of the punitive damages statute, treats disgorgement awards as economic and actual damages, despite what may be, in some cases, in a completely different context. I will readily acknowledge that the Texas courts have said disgorgement, made a distinction between disgorgement as an equitable remedy and actual damages in other contexts. But if you look at the case law in the context of the punitive damages statute, Texas courts  actual damages for purposes of punitive damages. But you just said there's not much authority on it. There is not. Not direct authority. Again, there's one case. Right, don't oversee your position. Understood, Your Honor. But again, as Mr. Smith does acknowledge, this court can uphold the district court's punitive damages award for another reason. That's because Mr. Apollich's conduct did satisfy the cap buster. And Judge Boyle did make all of the findings necessary to support the cap buster for the fraudulent procurement of a daughter. Well, you didn't argue that to her in the district court, though, did you? Your Honor, no. I think that would be going pretty far to intuit what the district court would have thought expressly about that. But Texas courts have upheld the application of this cap buster when it's not necessarily a specific finding that the cap buster applies. But when all the findings necessary to apply the cap buster are there, appellate courts have applied the cap buster to uphold punitive damages awards. As my time is running out, we would respectfully request that this court affirm the district court's judgment in its entirety. All right, thank you, sir. Thank you, Your Honor. Mr. Smith. Thank you, Judge Jones. I'm going to start in reverse order on the damages awards. So I'll start with the exemplary damages. The cases that EHO has cited to the court involve a narrow exception where an equitable reward involved a return of property. In those limited situations, the Supreme Court of Texas in a case called Nabors, and that's 700 Southwest 2nd, 901, recognized in dicta that a return of property could be equated with a form of compensatory damages. The other cases that EHO cited all build upon that. So in Sweeney, which was cited, that was a situation where there was essentially something that was treated as a return of property. In AMS, the disgorgement was a proxy for a license to use a patent. And so that was considered a form of return of property. EHO has cited no case, and I am aware of no case, that has treated pure disgorgement, where it is a benefit derived by the other side and not . . . Other than one of our colleagues on the district bench. I was not aware, I'm sorry, I'm not aware of that. AMS services? In AMS services, Your Honor, that involved disgorgement that was a proxy for a license to use a patent. So in that case, the idea was that the defendant was using a patent they weren't entitled to, and the district court made findings that that disgorgement award was a proxy for a license and could be used as a form of compensatory damages. That does not exist here. Long view is otherwise on point in suggesting, I agree, the Supreme Court of Texas said whatever remedy was ordered is unclear. But then it said, if we view it as a form of disgorgement, disgorgement is not a compensatory remedy, and it doesn't support viewing it as compensatory damages. The statutory language in the security statute is the same with respect to the exemplary damages statute. The exemplary damages statute puts the cap on economic and non-economic damages, which are defined as compensatory damages. So if you just take compensatory to compensatory, there's no distinction between those cases. As for the felony exception, as Your Honor pointed out, it was never argued below. This court has recognized, albeit in an unpublished decision, O'Hare, which we cited in our briefs, that that's not enough, that the fact finder has to make explicit findings in order to invoke it. And Texas courts have recognized that as well. As far as the Sevens Award is concerned, I guess I must confess that I have a hard time understanding their argument. I get that they have argued and alleged and the district court found a form of irreparable harm from my client's use of the confidential information. But when they were asked to quantify that harm, they cannot. And this is actual damages for fraud in the inducement. The case that they rely on to say that you can have an actual damages award of zero value conveyed is distinguishable. That was Siddiqui. In that case, the fraudulent inducement was to invest in an entity that had zero assets. And as a result, the court in that case said, zero assets, zero value. They can get the entire amount of their payment back. Here you have a severance that was given, and they're not seeking rescission. Again, if they thought that this was valueless to them, they could have elected the remedy of rescission and gotten the full money back that way. The fact that it's done in terms of actual damages, I think, shows that they received some value under the contract. Finally, with respect to disgorgement, I think the problem there is that the district court never made any findings. And there was no evidence that the entire salary my client received from a third party was as a result of the breach of fiduciary duty. The case that they cite Siddiqui is distinguishable. Well, what other basis was there for getting his buddy Green to set him up in another entity that was going to do exactly the same kind of work and go after exactly the same kind of clients with exactly the same kind of pricing mechanism that he had tried to get EHO to adopt? May I briefly respond, Your Honor? Try. You can speculate. Sure. So, Your Honor, I think that, number one, the evidence in the record showed that my client was hired and became the CEO because of a longstanding relationship with Mr. Green and also because he was an executive in the PBM space. I think to accept the district court's findings, you have to conclude that because of the existence of these two documents alone. But Mr. Green was not in the third party payer business, was he? No, but I think to accept the idea that disgorgement of the entire salary is appropriate here, the district court had to find that because of these two documents alone, my hospice Rx was formed, my client was hired, and he was paid. And I don't think there's evidence to establish that. Thank you. All righty.